IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES OLIVER,

        Plaintiff,                    No. 2:08-cv-2524 LKK GGH P

    vs.

SCOTT CHESSER,

        Defendant.              FINDINGS and RECOMMENDATIONS

_____/

        Plaintiff, a state prisoner, proceeds pro se in this action filed pursuant to 42 U.S.C. § 1983. Defendant has moved for judgment on the pleadings (Doc. No. 47), and plaintiff has moved for summary judgment (Doc. No. 48). For the reasons outlined below, the undersigned recommends that the plaintiff's motion be denied, and defendant's motion be granted in part, and denied in part.

        Background

        On October 23, 2008, plaintiff filed his original civil rights complaint in this action, alleging that his due process and equal protection rights were violated when he was not re-assigned to a prison job at his prior rate of pay after being released from administrative segregation. See Doc. No. 1 at 7-8. Plaintiff alleged that he was found not guilty of the infraction for which he was segregated, and that, while he had been returned to a paying position,

1

prison officials had failed to return him to a position at his prior level, despite several pay positions becoming available. See Doc. No. 1 at 8.

On January 13, 2009, the court dismissed the complaint with leave to amend because plaintiff had failed to state a claim upon which relief could be granted. See Doc. No. 6. In particular, the court found that, because plaintiff had no constitutional right to work, he was not entitled to: (1) due process procedural protections prior to being deprived of work; (2) back wages; or (3) placement or reinstatement in any position. See Doc. No. 6 at 3.

Plaintiff subsequently amended his complaint twice, and the action now proceeds on the second amended complaint.

*The Amended Complaint*

Plaintiff alleges that defendant Scott Chesser is employed as the Superintendent I of Prison Industries Authorities ("PIA") at California State Prison - Solano ("CSP-Solano"). See Doc. No. 19 at 5. In January 2007, when plaintiff was a state prisoner housed at CSP-Solano, defendant Chesser interviewed plaintiff about a grievance plaintiff had filed. Id. Plaintiff does not provide the court with any other information about the grievance.

According to plaintiff, at that time, "Scott Chesser stated to plaintiff Oliver that if he drop the 602 inmate appeal he can guarantee plaintiff Oliver B-Slot of $0.65 per hour....Plaintiff refuse[d] to accept defendant Scott Chesser offered [sic] and the outcome of plaintiff refusal was likely resulted in no promotion." See Doc. No. 19 at 5-6.

Plaintiff continues:

> As of this date September 03, 2009 plaintiff have not been promoted to his original pay position of $0.65¢ per hour (B-Slot), Just because plaintiff refused to drop his inmate appeal. Plaintiff have newly trained newly arrived inmates and watch them be promoted to the position that plaintiff should have been in.
>
> .....
>
> There is still a reasonable dispute as to whether plaintiff's grievance was the actual cause of him not being promoted. Similarly, although plaintiffs' [sic] is not entitled to a job in the prison system or a paying position, there

1  2  3  4
> is also a reasonable dispute as to whether and to what extend [sic] plaintiff grievances played a role in defendant Scott Chesser [sic] ultimate decision.
>
> Plaintiff is informed and believes, and thereon alleges, that defendant Scott Chesser have acted intentionally in the manner described above, and with knowledge of plaintiff's suffering and the risk of further serious harm that could result from his action or refusal to act.

Doc. No. 19 at 6.

According to plaintiff, he has been employed since May 2007 with the PIA. See Doc. No. 19 at 5. Plaintiff does not provide the court with any other details about his current job in his amended complaint, nor does he provide any information regarding the availability of "B" slot positions since May, 2007.[1]

Plaintiff seeks monetary damages and injunctive relief on account of defendant's retaliatory conduct, and discrimination in violation of the Fourteenth Amendment.

*Plaintiff's Motion for Summary Judgment*

Plaintiff makes additional allegations in his motion for summary judgment. Specifically, he alleges that

> Subsequent to his appeal of his right to equal treatment in promotion within the Prison Industries Authority, he was targeted, coerced, and threatened to drop his appeal or suffer further punitive action. Plaintiff had trained numerous other inmates, and watched as those inmates were promoted to higher pay scales, while he remained in the same job status. Defendant CHESSER offered Plaintiff a higher pay if he would drop his appeal with respect to the disparate treatment. Plaintiff's subsequent refusal to drop the appeal resulted in no promotion.

Doc. No. 48 at 3.

In support of his motion, plaintiff attaches: (1) the declaration of D. Garbutt; (2) the declaration of John B. Estep; (3) Appeal Log. #CSP-S-10-00884, in which plaintiff appealed

---

[1] According to the exhibits attached to his now-dismissed original complaint, plaintiff was earning 30 cents an hour as of June 11, 2007. See Doc. No. 1 at 42. Plaintiff was advised by the court, when his original complaint was dismissed, that the court could not refer to a prior pleading in order to make plaintiff's amended complaint complete, and that, once an amended complaint is filed, the original pleading no longer serves any function in the case. See Doc. No. 6 at 3-4. Plaintiff did not re-file these exhibits with his amended complaint. Because plaintiff has elected not to re-submit the evidence, the court refers to plaintiff's hourly wage at the time he was re-hired as a point of reference and not as evidence.

1  a May 5, 2010 chrono signed by Gary Huff writing plaintiff up for being out of bounds at work;
2  and (4) Appeal Log #CSP-S-10-0462, in which plaintiff appealed a February 3, 2010 chrono
3  signed by defendant writing plaintiff up for failing to report to work.
4         The declaration of D. Garbutt reads that declarant is a prisoner at CSP Solano, that
5  he has worked with plaintiff and that plaintiff trained him. See Doc. No. 48 at 11. He
6  additionally declares

> I have personally witness [sic] plaintiffs' Oliver being pass over for promotion on numerous occasion, while myself continue to be promoted. I also witness other inmates being promoted and given a pay raise who started in the saw and shear department way after plaintiff Oliver, and yet plaintiff Oliver remain at the lowest pay scale rate. During the period I work in the saw and shear department, plaintiffs' Oliver was performing at the skill level required of his current level of "B" (special Skills), as outlined by the Prison Industry Authority pay scal [sic]. The "B" skill is defined in part as set-up and layout craftmen who are responsible for difficult and technical work and have limited supervision. Plaintiffs' Oliver was and can perform in this criteria.

Doc. No. 48 at 11.

         The declaration of John B. Estep reads that declarant is a prisoner housed at CSP-Solano. See Doc. No. 48 at 13. Declarant writes that on October 26, 2007, declarant was released from Administrative Segregation into general population, and returned back to his same job assignment at the same rate of pay. Id. Declarant writes that he was not required to wait to receive his same rate of pay, and did not have to submit an application to be re-hired. Id.

         Appeal CSP-S Log No. 10-00884 concerns a CDC-128 chrono plaintiff received on May 5, 2010, from plaintiff's supervisor Gary Huff for being out of bounds at work. According to the chrono, "[o]n 5/04/2010, at approximately 1310 hours, I observed inmate Oliver Out of Bounds in the Welding department....during his assigned work hours. I have verbally counseled inmate Oliver on several occasions in the past regarding PIA policy, and told him that the next violation would result in a CDC-128." See Doc. No. 48 at 20.

         Appeal CSP-S Log No. 10-00462 concerns a CDC-128 chrono plaintiff received on February 3, 2010, signed by defendant, after plaintiff failed to report for his work assignment

1   on February 2, 2010. The chrono reads that "[plaintiff's] housing unit officer, C/O Williams,
2   stated Oliver refused to go to work. Oliver has been verbally counseled regarding his
3   performance in the past." See Doc. No. 48 at 32.
4       In support of his motion, plaintiff submits a statement of undisputed facts, which
5   are as follows:
6       (1) Plaintiff was treated disparately by Defendant CHESSER through defendant's
7   intentional acts of promoting other inmates over Plaintiff, who was equally if not more qualified.
8       (2) Defendant CHESSER treated plaintiff in an atypical manner by refusing to
9   permit plaintiff to return to his work assignment.
10      (3) Plaintiff was retaliated against by SCOTT CHESSER.
11      (4) Defendant CHESSER retaliated against [sic] on appeal by Defendant
12  CHESSER.
13  Doc. No. 48 at 7-8.

14      *Additional Allegations*

15      Plaintiff makes additional allegations in his responses to defendant's motion for
16  judgment on the pleadings and defendant' s opposition to plaintiff's motion for summary
17  judgment.
18      Plaintiff's "Supplemental Addendum," filed January 10, 2012, includes a
19  declaration from Monte Moonetham, a leadman in the Saw and Shears Department of the PIA
20  Metal Fabrication Unit at CSP-Solano. See Doc. No. 53 at 2. According to Mr. Mooneyham, at
21  no time during his employment were welding booths "out of bounds." Id. Declarant also writes
22  that,

23      as the Leadman in this Department, I was responsible for reporting to Scott
        Chesser the levels of performance of the other men working with me, and
24      to notify him as to whom was up for pay grade increases, due to their
        length of time. That on at least one occasion during this time, I personally
25      informed Scott Chesser that Plaintiff Oliver exhibited the requisite
        experience, quality control, and time that indicated he deserved a raise.
26      That on this occasion, Defendant CHESSER told me personally that

1  Plaintiff Oliver was "getting nothing."
2 Doc. No. 53 at 3.
3  In his response to defendant's motion for judgment on the pleadings, plaintiff
4 acknowledges that a prison job is a privilege and not a right, but that once he was hired, "he
5 enjoyed the benefit of a privilege, and that such a privilege became a liberty interest protected by
6 the Constitution of the United States." See Doc. No. 51 at 2.
7  In his reply in support of his summary judgment motion, plaintiff alleges that he is
8 not required to seek promotion or a pay raise, but "simply must perform his job assignments
9 diligently and responsibly, and have enough time to enjoy in the fruits of his labors, usually
10 receiving a pay raise every three months." See Doc. No. 52 at 2. Plaintiff further writes that he
11 "does not know if defendant refused to treat him fairly and equally in his employment because of
12 his race, religion, etc.; that is something that could only be determined upon direct examination."
13 Id. at 3.

14 Defendant's Motion for Judgment on the Pleadings

15  Defendant moves for judgment on the pleadings, alleging that plaintiff has failed
16 to state a claim upon which relief can be granted. Defendant argues that plaintiff has
17 acknowledged that he has no right to a prison job, and that plaintiff cannot maintain an action
18 "based on nonexistent 'rights.'" Doc. No. 47 at 3.

> It is undisputed that Plaintiff has no rights to his PIA job or any rate of pay at any job within the prison system. For Constitutional rights to be violated here, Plaintiff would have to have some rights to his job in the first place, and he acknowledges he does not. Additionally, the things plaintiff argues were retaliatory, since he also admitted the underlying accuracy of the two violations, cannot be inferred to amount to evidence in support of any section 1983 violation, based on either the 1st or 5th amendments.

Doc. 42 at 4.

24  Plaintiff opposes the motion, (1) arguing that his job is a privilege protected by the
25 Constitution, see Doc. No. 51 at 2, and (2) denying the underlying charge in the February 3, 2010
26 chrono, that he refused to go to work. Id. at 3-5.

6

Legal Standard

Federal Rules of Civil Procedure 12(c) authorizes a party to move for judgment on the pleadings. "A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitle to judgment as a matter of law." Ventress v. Japan Airlines, 603 F.3d 676, 681 (9th Cir. 2010) (citations and quotation marks omitted). When a party used a motion for judgment on the pleadings to raise the defense of failure to state a claim, the motion "faces the same test as a motion under Rule 12(b)(6)." McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988); accord Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (stating "that Rule 12(c) is 'functionally identical' to Rule 12(b)(6) and that 'the same standard of review' applied to motion brought under either rule") (citations omitted).

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the pleadings set forth in the complaint. Vega v. JPMorgan Chase Bank, N.A., 654 F.Supp.2d 1104, 1109 (E.D.Cal.2009). Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and plain" statement of plaintiff's claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); see also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009). "A complaint may survive a motion to dismiss if, taking all well-pleaded factual allegations as true, it contains 'enough facts to state a claim to relief that is plausible on its face.'" Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Caviness v. Horizin Cmty. Learing Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal, 556 U.S. at 678). The court accepts all of the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. Corrie v. Caterpillar, 503 F.3d 974, 977 (9th Cir. 2007). The court is "not, however, required to accept as true conclusory allegations that are

contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Paulsen v. CNF, Inc., 559 F.3d at 1071 (citations and quotation marks omitted).

Judgment on the pleadings is also proper when there is either a "lack of cognizable legal theory" or the "absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.1988) (in the context of a Rule 12(b)(6) motion); Robertson v. Dean Whitter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984) (same; pro se plaintiff failed to plead any facts from which essential element could be inferred).

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted); see also Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 980 n. 18 (9th Cir. 1999) ("When considering a motion for judgment on the pleadings, [the] court may consider facts that are contained in material of which the court may take judicial notice.") (citation and quotation marks omitted).

Analysis

*Equal Protection*

As an initial matter, prisoners do not have a right to a job or program opportunities in prison. Sandin v. Connor, 515 U.S. 472, 484, 115 S.Ct. 2293 (1995); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1997); Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985). Nor does a prisoner have a constitutional right to a particular classification status. Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987) (quoting Moody v. Daggett, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274 (1976), wherein the Supreme Court, in a footnote, explicitly rejected a claim that "prisoner classification and eligibility for rehabilitative programs in the

8

federal system" invoked due process protections).  Thus, in general, prison officials' housing and classification decisions do not give rise to federal constitutional claims encompassed by the protection of liberty and property guaranteed by the Fifth and Fourteenth Amendments.  See Board of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701 (1972); see also Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007) (classification at a Level IV prison rather than at a Level III prison did not subject Myron to an atypical and significant hardship).

Nevertheless, prisoners do have a constitutional right to be free from unlawful discrimination.  For example, prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race.  Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975 (1974).  Prisoners are also protected by the Equal Protection Clause from intentional discrimination based upon their religion.  See, e.g., Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008).

At times, and in contexts much different from the one at issue here, the Equal Protection Clause of the Fourteenth Amendment may also be invoked where similarly situated individuals are being intentionally treated differently without a rational relationship to a legitimate state purpose.  Engquist v. Oregon Department of Agriculture, 553 U.S. 591, 601–02, 128 S.Ct. 2146  (2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

However, the Supreme Court has cautioned that this "class of one" theory of equal protection is not well-suited to employment suits because "employment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify....[T]reating seemingly similarly situated individuals differently in the employment context is par for the course."  Engquist, 553 U.S. at 604 (finding that "class of one" theory of equal protection has no application in public employment context– "But we have never found the Equal Protection Clause implicated in the specific circumstance where, as here, government employers are alleged to have made and individualized, subjective personnel decision in a

seemingly arbitrary or irrational manner" Id. at 605). If the case were otherwise, the federal courts would be the "board of administrative review" for every employment related grievance. If such a "class of one" theory is not viable in the public employment context, it is even less viable in the prison context where comparisons of prisoners are even more multifaceted, subjective and complex. The Supreme Court has not drawn the line in the due process prison job context precluding *any* such claim, only to have *every* such claim subject to a *post hoc* review under the rubric of equal protection. See Davis v. Villagrana, 2011 WL 318328 (E.D. Cal. 2011) (nixing the "class of one" theory in a prison job litigation).

In this case, plaintiff alleges that "other inmates, trained by plaintiff, were promoted to higher pay positions, without any consideration or legitimate reasoning for the disparate treatment...." See Doc. No. 48 at 5. Plaintiff also pleads that he was treated in an "atypical manner" when not allowed to return to work immediately upon release from administrative segregation, because at least one other inmate was immediately placed in a paying job upon his release from administrative segregation. See Doc. No. 48 at 7-8. Plaintiff acknowledges that he is "unsure" about whether defendant is motivated by plaintiff's race or religion. See Doc. No. 52 at 2.

Plaintiff's allegations do not satisfy his pleading burden, because plaintiff fails to plead any facts which would suggest that he is a member of a suspect class, or that defendant acted with discriminatory intent. Defendant's motion for judgment on the pleadings should accordingly be granted as to plaintiff's equal protection claim. Because there is no chance that an equal protection claim would be recognized under the factual scenario posited by plaintiff, the motion should be granted as to equal protection without leave to amend.

*Retaliation*

Defendant argues that plaintiff has no right to a prison job, and therefore, there can be no retaliation or other constitutional violation. See Doc. No. 47 at 4. The undersigned views plaintiff's complaint differently – specifically, the undersigned reads plaintiff's pleadings

to allege a violation of his First Amendment right to file grievances against prison officials, and to be free from retaliation for doing so. See Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

The Ninth Circuit recently reiterated the five elements of a retaliation claim, specifying what a plaintiff must allege in order to defeat a motion to dismiss for failure to state a claim:

> First, the plaintiff must allege that the retaliated-against conduct is protected. The filing of an inmate grievance is protected conduct. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005). Second, the plaintiff must claim the defendant took adverse action against the plaintiff. Id. at 567. The adverse action need not be an independent constitutional violation. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). "[T]he mere *threat* of harm can be an adverse action...." Brodheim, 584 F.3d at 1270.
>
> Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. See Pratt, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent"); Murphy v. Lane, 833 F.2d 106, 108-09 (7th Cir. 1987).
>
> Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Robinson, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," Brodheim, 584 F.3d at 1269, that is "more than minimal," Robinson, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the claim at the motion to dismiss stage.
>
> Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution...." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985). A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, id., or that they were "unnecessary to the maintenance of the institution." Franklin v. Murphy, 745 F.2d 1221, 1230 (9th Cir. 1984).

Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012).

In this case, plaintiff has plead that: (1) in January 2007 defendant offered plaintiff a Slot B position if plaintiff dropped an appeal; (2) plaintiff refused to drop the appeal; (3) in

11

May 2007, plaintiff received a job with the PIA; and (4) since May 2007, plaintiff has not been promoted. Plaintiff has additionally alleged that he is qualified for a promotion, that other inmates whom plaintiff has trained have been promoted, and that plaintiff should receive a pay raise as a matter of course every three months if he performs diligently and responsibly.

What plaintiff has not plead, however, is that any Slot B positions became available after May 2007, and that someone other than plaintiff was promoted to the available position.

However, viewing his pleadings as broadly as possible, plaintiff has alleged sufficient facts to state a claim for retaliation under Watison. On the one hand, the exchange between plaintiff and defendant might simply be characterized as an informal settlement offer made to resolve plaintiff's then-pending administrative grievance – such offers are often made and declined in litigation, and do not necessarily result in colorable claims for retaliation. Moreover, plaintiff received a job in May 2007, without having to drop his grievance.

But plaintiff alleges that he has not been promoted since that time, while other inmates, including inmates whom plaintiff has trained, have been. He has also introduced evidence, from inmate Moonetham, which suggests that at least one of plaintiff's chronos was baseless, and that, despite plaintiff's qualifications, plaintiff will "get nothing."

Accordingly, plaintiff has alleged a plausible retaliation claim because the factual content of the pleadings allows the court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." The undersigned will accordingly recommend that defendant's motion for judgment be denied to the retaliation claims.

Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgement, alleging that defendant has retaliated against him after plaintiff refused to drop his appeal. See Doc. No. 48 at 3. Plaintiff alleges that other prisoners, including ones he trained, have been promoted ahead of him, and that at least one other prisoner has not been wait-listed for a job after leaving SHU. Id. Plaintiff additionally

provides the court with information about two grievances he filed in 2010 after he received disciplinary chronos for failing to appear for work and failing to remain in bounds at work. See id. at 4-6.

Defendant opposes the motion, and additionally objects to each of plaintiff's undisputed facts.

### Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

\\\\\

1    If the moving party meets its initial responsibility, the burden then shifts to the
2 opposing party to establish that a genuine issue as to any material fact actually does exist. See
3 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356
4 (1986). In attempting to establish the existence of this factual dispute, the opposing party may
5 not rely upon the allegations or denials of its pleadings but is required to tender evidence of
6 specific facts in the form of affidavits, and/or admissible discovery material, in support of its
7 contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,
8 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is
9 material, i.e., a fact that might affect the outcome of the suit under the governing law, see
10 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.
11 Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the
12 dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the
13 nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

14    In the endeavor to establish the existence of a factual dispute, the opposing party
15 need not establish a material issue of fact conclusively in its favor. It is sufficient that "the
16 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
17 versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary
18 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
19 genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.
20 56(e) advisory committee's note on 1963 amendments).

21    In resolving the summary judgment motion, the court examines the pleadings,
22 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
23 any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson,
24 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the
25 court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct.
26 at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

### Equal Protection

As noted above, the undersigned has recommended granting defendant's motion for judgment on the pleadings as to plaintiff's equal protection claims.

### Retaliation

As noted above, the undersigned recommends denying defendant's motion for judgment on the retaliation claims.

However, plaintiff is not entitled to summary judgment on the retaliation claim, because he has failed to establish that his January 2007 refusal was the "motivating or substantial factor" for the alleged retaliation.  See Brodheim v. Cry, 584 F.3d at 1271.  The affidavits of Garbutt, Estep, and Mooneyham establish, at best, that plaintiff has trained other inmates, that other inmates have been promoted from their positions, that plaintiff is able to work at "B" skill level, and that defendant has told a leadman that plaintiff will "get nothing."  None indicate that a higher level position for which plaintiff is qualified has opened since May 2007 and that defendant has intentionally denied plaintiff a promotion to the higher-level position because plaintiff refused to drop his 2007 appeal.  Because the record includes no direct "evidence of a retaliatory motive," but only one possible inference where in the context of plaintiff as the moving party inferences are drawn in favor of defendant, plaintiff's motion for summary judgment should accordingly be denied as to the retaliation claim.

\\\\\

\\\\\

1  Accordingly, IT IS HEREBY RECOMMENDED that:

2  1. Plaintiff's motion for summary judgment (Doc. No. 48) be denied;

3  2. Defendants' motion for judgment on the pleadings (Doc. No. 47) be granted in part and denied in part leaving only a retaliation claim at issue.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 10, 2012

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

ggh:rb/oliv2524.fr